

# THE ATTORNEY GENERAL
# OF TEXAS

JOHN L. HILL.
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

December 3, 1976

The Honorable Jackie W. St. Clair    Opinion No. H-906
Commissioner
Texas Department of Labor &          Re: Application of the
   Standards                         Texas Auctioneer Act to
P. O. Box 12157, Capitol Station     livestock marketing
Austin, Texas  78711                 businesses or auction
                                 barns.

Dear Commissioner St. Clair:

You have requested our opinion regarding the coverage
and application of the Texas Auctioneer Act, article 8700,
V.T.C.S., to livestock marketing businesses or auction barns.
You first ask whether article 8700 includes livestock
marketing businesses within the definition of "auctioneer"
and whether, therefore, such a business is required to
obtain a license.

Article 8700 itself lends support to the position that
a livestock marketing business is embraced within the statute's
terms. A list of seven "exempt transactions" in section 2
does not include an exception for a livestock marketing
business. Furthermore, section 6 furnishes evidence that
the omission was not inadvertent. It specifies that the
provisions of section 5, which require an auctioneer to
obtain a bond,

> shall not apply to livestock auctioneers
> who are engaged exclusively in the live-
> stock auction business in Texas through
> bonded livestock auction facilities . . . . .

The clear implication of this provision is that some live-
stock auctioneers are subject to the bonding requirements of
section 5, and hence, that all livestock auctioneers, since
they are not exempted from other portions of the statute,
are subject generally thereto. We note that an "auctioneer"
for purposes of article 8700 includes an individual,
corporation "or other group, however organized." See Attorney
General Opinion H-708 (1975).

You also ask whether a livestock marketing business must in all circumstances file a bond. As we have previously stated, section 5 of article 8700 requires every entity which seeks an auctioneer's license simultaneously to obtain a bond in the amount of $5,000.00. Section 6, however, excludes from this bonding requirement "livestock auctioneers who are engaged exclusively in the livestock auction business in Texas through bonded livestock auction facilities." Bonded livestock auction facilities are provided for by the Federal Packers and Stockyards Act of 1921, 7 U.S.C. § 181, et seq., and by article 1287a, V.T.C.S. As to livestock marketing businesses which may not be covered by either of these two bonding provisions, we believe that the bonding requirement of section 5 is applicable.

In your third and final question, you ask:

> Does the federal Packers and Stockyards Act
> of 1921, 7 U.S.C.A., Section 181 et seq.
> preempt and render invalid the Texas Auctioneer
> Act, Article 8700, V.T.C.S., as it applies to
> those livestock marketing businesses currently
> covered by federal regulation?

The Federal Packers and Stockyards Act was enacted in 1921, and the primary purpose of the Act was to assure fair competition and trade practices in the field of livestock marketing. The coverage of the Act was expanded in 1958 to include all livestock marketing acitivities which were a part of interstate commerce; however, the federal Act does not require any auctioneering license as such, but rather provides for registration of auction markets regardless of size. As stated in the bill analysis and legislative history of the 1958 Amendment to the Act,

> [t]his registration does not include
> licensing in the ordinary sense. It merely
> provides a means of identifying the persons
> who are engaging in the business of a market
> agency or dealer, the nature of their business,
> and the place or places where they operate. . . .
> 3 U.S. Code Cong. & Ad. News 5212, 5219 (1958).
> (Emphasis added).

As the Supreme Court held in Perez v. Campbell, 402 U.S. 637 (1971), the Supremacy Clause will invalidate only a state law which frustrates the full effectiveness of the federal statute. Justice White, speaking for the majority, stated the test as follows:

> Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict. Id. at 644.

In this particular case, the Texas Auctioneer Act seeks only to upgrade the professional standards of the auctioneering aspect of the livestock marketing business, and we note that the federal act does not attempt to regulate the specific activities of auctioneers, but rather regulates the general conduct of participants in the livestock marketing business at federally bonded facilities. This regulation, however, does not include licensing of auctioneers, and we do not believe the Texas Auctioneer Act invades the field already covered by an Act of Congress. Cf. De Vries v. Sig Ellingson & Co., 100 F. Supp. 781 (D. Minn. 1951), aff'd 199 F.2d 677 (8th Cir.), cert. denied, 344 U.S. 934 (1952); Attorney General Opinion O-5458 (1943). In our opinion, there is no conflict between the Federal Packers and Stockyards Act of 1921 and the Texas Auctioneer Act. Therefore, we answer your final question in the negative.

### S U M M A R Y

> Livestock marketing businesses or auction barns are covered by the definition of "auctioneer" under article 8700, V.T.C.S., and are required to obtain an auctioneer's license. Auction barns are not required to file a bond under the Texas Auctioneer Act, so long as they are bonded pursuant to either the Federal Packers and Stockyards Act of 1921, 7 U.S.C. § 181, et seq. or the Live Stock Auction Commission Merchants Act, article 1287a, V.T.C.S. The Federal Packers and

Stockyards Act does not preempt or render invalid the Texas Auctioneer Act, because there is no conflict between the two statutes.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb

p. 3805